IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ABDULLAH MUHAMMAD,          :      Civil No. 3:19-cv-1316
                               :
         Plaintiff          :      (Judge Mariani)
                               :
     v.          :
                               :
LEA MARTIN, *et al.*,          :
                               :
         Defendants          :

## MEMORANDUM

Plaintiff Abdullah Muhammad ("Muhammad"), an inmate who was housed at all relevant times at the State Correctional Institution, Dallas, Pennsylvania ("SCI-Dallas"), initiated the above-captioned action on March 18, 2019 by filing a complaint in the Court of Common Pleas of Luzerne County, Pennsylvania. (Doc. 1-1). Named as Defendants are Lawrence Mahally, the Superintendent of SCI-Dallas, and Lea Martin, Health Care Administrator at SCI-Dallas. (*Id.*). Muhammad asserts that Defendant Mahally failed to protect him from an attack by his cellmate and that Defendant Martin was deliberately indifferent to his serious medical needs. (*Id.*).

Defendants filed a notice of removal on August 2, 2019 (Doc. 1), and a motion for summary judgment July 27, 2020 (Doc. 17). On September 2, 2020, Muhammad filed a cross-motion (Doc. 22) for summary judgment. For the reasons set forth below, the Court will grant Defendants' motion and deny Muhammad's motion.

## I.   Statement of Undisputed Facts[1]

Muhammad was previously housed at SCI-Dallas and placed in a cell with inmate Anderson.  (Doc. 18, Statement of Material Facts, ¶¶ 1, 2; Doc. 24, Counterstatement of Material Facts, ¶¶ 1, 2).  When Muhammad first moved into the cell with inmate Anderson, he was told that his cellmate is "kind of weird" and "off," which Muhammad interpreted as not mentally stable.  (*Id.* at ¶ 3).  Muhammad felt that Anderson was "off."  (*Id.* at ¶ 4).  On the same day that Muhammad moved into the cell with inmate Anderson, Defendants contend Muhammad spoke to Officer Dornan about being moved.  (Doc. 18 ¶ 4).  Muhammad asserts that the spoke to Officer Gordon, not Officer Dornan, about being moved to a different cell.  (Doc. 24 ¶ 5).

Muhammad remembered inmate Anderson from his time at the State Correctional Institution, Fayette ("SCI-Fayette"), where Anderson had "trouble" with other cellmates, in that he was controlling and bossy.  (Doc. 18 ¶¶ 6, 7; Doc. 24 ¶¶ 6, 7).  Muhammad heard that Anderson was "trouble" from a third party.  (Doc. 24 ¶ 7).  Muhammad did not know that inmate Anderson would be violent with him.  (Doc. 18 ¶ 8; Doc. 24 ¶ 8).  Muhammad was

---

[1]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (Docs. 18, 24).

aware of one instance where Anderson physically attacked another inmate. (*Id.* at ¶ 9). Muhammad was not afraid of inmate Anderson. (*Id.* at ¶ 10).

Inmate Anderson was able to boil water in his cell using a "stinger." (*Id.* at ¶ 11). When Muhammad returned from work on March 31, 2018, Anderson threw a bucket of boiling water on to Muhammad as he walked into the cell. (*Id.* at ¶ 12). When the incident occurred, Muhammad had been celled with Anderson for approximately one month. (*Id.* at ¶ 13). During that month, Muhammad had no issues with Anderson. (*Id.* at ¶ 14).

A corrections officer witnessed the assault and immediately subdued Anderson. (*Id.* at ¶ 15). Muhammad was immediately taken to medical. (*Id.* at ¶ 16). Approximately thirty to forty-five minutes after his arrival at the medical department, Muhammad was given Motrin. (*Id.* at ¶ 18). After approximately one hour in the medical department, a white, cold balm was applied to Muhammad's burns. (*Id.* at ¶ 17). Muhammad was in the infirmary for "a while" but does not recall exactly how long. (*Id.* at ¶ 19). After being released from the infirmary, Muhammad visited the infirmary once or twice a day to receive treatments for his burns, consisting of coating his neck and face with the salve. (*Id.* at ¶ 20). Muhammad was treated by a male nurse, a female doctor identified as "Dr. G," and nurse Susan. (*Id.* at ¶ 21).

## II.   **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality,

3

. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

4

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).  Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.  *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).  Thus, "when presented with cross[-]motions for summary judgment, the Court must consider the motions separately, and view the evidence presented for each motion in the light most favorable to the nonmoving party." *Borrell v. Bloomsburg Univ.*, 63 F. Supp. 3d 418, 433 (M.D. Pa. 2014) (citations omitted).

5

"[E]ach movant must demonstrate that no genuine issue of material fact exists; if both

parties fail to carry their respective burdens, the court must deny [both] motions." *Quarles v.

Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*,

542 F.3d 1007, 1023 (3d Cir. 2008)).

III.   <u>Discussion</u>

    A.   **Failure to Protect Claim against Defendant Mahally**

It is well-settled that "'[b]eing violently assaulted in prison is simply not part of the

penalty that criminal offenders pay for their offenses against society.'  As such, the Eighth

Amendment's Cruel and Unusual Punishments Clause imposes on prison officials 'a duty to

protect prisoners from violence at the hands of other prisoners.'"  *Bistrian v. Levi*, 696 F.3d

352, 366-67 (3d Cir. 2012) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833, 834 (1994); and

citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130-33 (3d Cir. 2001); *Hamilton v. Leavy*,

117 F.3d 742, 746 (3d Cir. 1997)).

In order for a plaintiff to prove a constitutional violation in a failure-to-protect case,

the plaintiff must produce sufficient evidence showing that: (1) he was incarcerated under

conditions posing a substantial risk of serious harm; (2) each defendant was deliberately

indifferent to that risk; and, (3) the defendant's deliberate indifference caused him harm.

*Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019) (citing *Bistrian*, 696 F.3d at 367,

*Hamilton*, 117 F.3d at 746).  Deliberate indifference requires that the prison official "knows

of and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Consequently, prison officials can avoid liability by showing they were unaware of the danger, or they believed the risk was insubstantial or nonexistent. *Bistrian*, 696 F.3d at 367. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* (quoting *Farmer*, 511 U.S. at 844) (internal quotation marks omitted)). Mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to civil rights liability. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Moreover, liability may not be imposed under § 1983 on the traditional standards of *respondeat superior*. *Capone v. Marinelli*, 868 F.2d 102, 106 (3d Cir. 1989) (citing *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1017, 1082 (3d Cir. 1976)). In *Capone*, the court noted "that supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." 868 F.2d at 106 n.7. The plaintiff must allege that the defendant was personally involved in the events or occurrences that underlie the claim. *See Atkinson v. Taylor*, 316 F.3d 257, 270-71 (3d Cir. 2003); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("[a] defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge

and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.").

In the instant action, Defendants do not contest that Muhammad suffered injuries in a surprise attack by inmate Anderson.  (Doc. 19, p. 1; Doc. 26, p. 3).  Defendants argue that summary judgment is warranted because Muhammad failed to present evidence that Defendant Mahally was aware that inmate Anderson presented a specific risk of harm, and "[t]here is nothing in the record showing that Mahally had any information or knowledge about Anderson, or that Muhammad spoke to Mahally."  (Doc. 19, p. 8).  In response, Muhammad asserts that he informed "prison staff" of his desire to be moved to a different cell on the first day he was placed in a cell with Anderson.  (Doc. 23, pp. 4-5).  Because he made this request to "prison staff," Muhammad appears to imply that Defendant Mahally knew of a specific risk of being housed with inmate Anderson and failed to effectuate a cell transfer.  (Id.).  However, Muhammad has presented no evidence that Defendant Mahally knew of this request, or participated in or possessed any actual knowledge of the threat posed by being celled with Anderson, upon which a reasonable jury could conclude that he is liable for failing to protect Muhammad.

Moreover, Muhammad testified that he was not afraid of Anderson, he had no idea that Anderson would be violent with him, he did not view Anderson as an enemy, and because they are both Muslims, "[they're] supposed to be brothers to one another."  (Doc.

18 ¶¶ 8, 10; Doc. 24 ¶¶ 8, 10; Doc. 18-1, p. 19-20, Deposition of Abdullah Muhammad

("Muhammad Dep."), N.T. 18:5-6; 20:10-13).  Muhammad testified as follows:

> I didn't know that [Anderson] was violent in the sense of doing what he would
> do, but I knew that he had a history of having problems with cellies.  And then
> only until after this happened to me, when I was in the infirmary, trying to
> heal, that people would come to me and say, yeah, he's known for doing this
> and that.  So I had to learn the history later on, after the fact.  I wish I would
> have known before.

(Doc. 18-1, p. 18, Muhammad Dep., N.T. 17:14-22).  Although Muhammad knew that

inmate Anderson had a "history of problems" with cellmates, he admits that he did know that

Anderson had violent tendencies.  Additionally, Muhammad does not assert that inmate

Anderson ever threatened him with physical violence or attempted to attack him.  As such,

Defendant Mahally could not have been aware of any specific threat of harm against

Muhammad, since no threat ever existed.  Because there were no previous incidents of

violence between Muhammad and Anderson, Defendant Mahally could not have been

aware of a serious risk to Muhammad's health and safety, and there is no basis for a claim

that Muhammad and Anderson were improperly celled together.  Accordingly, Defendant

Mahally is entitled to summary judgment with respect to any claim that he intentionally failed

to protect Muhammad's health and safety by failing to effectuate a cell transfer.  *See*

*Blackstone v. Thompson*, 568 F. App'x 82 (3d Cir. 2014) (affirming summary judgment

because the inmate failed to show that corrections officers both knew of and were

deliberately indifferent to an excessive risk to his safety, where there were no longstanding,

pervasive, well-documented or previously noted tensions between prisoner and his

cellmate); *Bizzell v. Tennis*, 447 F. App'x 112 (3d Cir. 2011) (affirming grant of summary judgment to defendants as to plaintiff's failure to protect claim because lack of prior fighting between the two inmates involved, even though plaintiff had informed officers that his cellmate was "crazy," does not indicate that defendants were aware of a serious risk).

To the extent that Muhammad seeks to establish Defendant Mahally's personal involvement based on his response to a grievance (*see* Doc. 1-1 ¶¶ 17, 18), participation in the after-the-fact review of a grievance is insufficient to establish liability. *Rode*, 845 F.2d at 1207. To that end, Muhammad's assertion that Defendant Mahally responded to a grievance does not establish that he participated in or was involved in the underlying unconstitutional conduct. *See Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

Because Muhammad has not presented any evidence from which it can be inferred that Defendant Mahally knew of the substantial risk of injury presented by placing Muhammad in a cell with inmate Anderson, summary judgment will be entered in favor of Defendant Mahally.

### B.    Deliberate Indifference Claim against Defendant Martin

Muhammad also sets forth an Eighth Amendment deliberate indifference claim against Defendant Martin.  (Doc. 1 ¶ 25).

### 1.   *Lack of Personal Involvement*

Individual liability can be imposed under 42 U.S.C. § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode*, 845 F.2d at 1207); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003). The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence." *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 71 (3d Cir. 2011) (quoting *Rode*, 845 F.2d at 1207). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of "conduct, time, place, and persons responsible." *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. Moreover, a defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Olivia*, 226 F.3d 198, 201-02 (3d Cir. 2000). Allegations that a supervisor "had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor" do not suffice. *Broadwater v. Fow*, 945 F.Supp.2d 574, 588 (M.D. Pa. 2013) (citing *C.H. ex rel. Z.H.*, 226 F.3d at 202).

This principle applies with equal force to prison health care administrators, like Defendant Martin, who generally oversee health care programs but do not make specific treatment decisions relating to inmates. As a general rule, such administrators simply do not have the requisite level of personal involvement in specific inmate care decisions to be held personally culpable for alleged Eighth Amendment violations. *See, e.g.*, *Tenon v. Dreibelbis,* 606 F. App'x 681, 688 (3d Cir. 2015).

Here, the undisputed evidence establishes that Defendant Martin, the health care administrator at SCI-Dallas, was not personally involved in Muhammad's medical treatment. Indeed, Muhammad admits that Defendant Martin never treated him. (Doc. 18 ¶ 21; Doc. 24 ¶ 21). Instead, he asserts that Defendant Martin, the health care administrator at SCI-Dallas, is responsible for all medical staff at the prison. (Doc. 1-1 ¶¶ 28-31). It appears that Muhammad attempts to hold Defendant Martin liable for the actions of her subordinates, based on her role as health care administrator. As articulated above, it is well-established that prison officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Rode*, 845 F.2d at 1207. Defendant Martin is an administrative official and does not have the requisite level of personal involvement in specific inmate medical decisions to be held personally culpable for alleged Eighth Amendment infractions. *See Tenon*, 606 F. App'x at 688. Accordingly, Defendant Martin is entitled to judgment in her favor to the extent that Muhammad's claims against her rely on a *respondeat superior* theory of liability.

Muhammad further asserts that Defendant Martin responded to and denied his grievance. (Doc. 1-1 ¶¶ 16, 25-27). The filing of a grievance is not sufficient to show the actual knowledge required for personal involvement. It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately or failed to respond to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct. *See Rode*, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); *Brooks*, 167 F. App'x at 925. In accordance with the foregoing, any attempt by Muhammad to establish liability against Defendant Martin based upon her response to a grievance does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005).

### 2. *Inadequate Medical Care Claim*

Assuming *arguendo* that Muhammad has set forth an Eighth Amendment claim against Defendant Martin based on inadequate medical care, this claim likewise claims. The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000). In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to

13

those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  To

establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate

must allege acts or omissions by prison officials that were sufficiently harmful to establish

deliberate indifference to a serious medical need.  *See Spruill v. Gillis*, 372 F.3d 218, 235

(3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  The

relevant inquiry is whether the defendant: (1) was subjectively deliberately indifferent (2) to

the plaintiff's objectively serious medical needs.  *Farmer*, 511 U.S. at 834, 837; *Chavarriaga*

*v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

      The "deliberate indifference" prong of the applicable Eighth Amendment analysis

requires that the defendant actually know of and disregard "an excessive risk to inmate

health or safety."  *Farmer*, 511 U.S. at 837.  Circumstantial evidence can establish

subjective knowledge on the part of the defendant if it shows that the excessive risk was so

obvious that the official must have known about it.  *See Beers-Capitol*, 256 F.3d at 133

(citing *Farmer*, 511 U.S. at 842).  The Third Circuit has found deliberate indifference when a

prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses

to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3)

prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse*,

182 F.3d at 197.

      The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical

needs were serious.  A serious medical need is "one that has been diagnosed by a

physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain.  *See id.*

Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation.  *Whitley v. Albers*, 475 U.S. 312 (1986).  The Supreme Court has also noted that "[l]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).  Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. *Wilson v. Seiter*, 501 U.S. 294 (1991). Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment.  *See White*, 897 F.2d at 108-10.

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

It is undisputed that Muhammad's injuries after the March 31, 2018 incident consisted of burns to his face and neck. (Doc. 18 ¶¶ 17, 20; Doc. 24 ¶¶ 17, 20; Doc. 24, pp. 13, 19-20, 32). The Court finds that Muhammad has established that these conditions were serious medical needs under the standard set forth in *Estelle*. 429 U.S. at 104. The Court must next determine whether Muhammad has established a deliberate indifference to those needs.

The record reflects that Muhammad received immediate medical attention after he was attacked by inmate Anderson. (Doc. 18 ¶¶ 16-21; Doc. 24 ¶¶ 16-21; Doc. 24, pp. 13, 19-20, 32). Muhammad was treated by three different medical personnel, stayed in the infirmary for quite some time, and continued to receive regular treatment after he was released from the infirmary. (Doc. 18 ¶¶ 19-21; Doc. 24 ¶¶ 19-21; Doc. 24, pp. 17-20, 32-35). Significantly, Muhammad does not assert that Defendant Martin provided him with medical care, refused or delayed needed medical treatment, or prevented him from

16

receiving medical care.  The evidence establishes that Muhammad was under the regular

care of medical experts and courts will not second guess whether a particular course of

treatment is adequate or proper.  *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir.

1997) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979));

*Spruill*, 372 F.3d at 235 (holding that "mere disagreement as to the proper medical

treatment" is insufficient to state a constitutional violation).  The Court will grant Defendants'

motion with respect to any potential Eighth Amendment medical care claim against

Defendant Martin.

## IV.   <u>Conclusion</u>

For the foregoing reasons, the Court will grant Defendants' motion (Doc. 17) and

enter judgment in their favor.  The Court will deny Muhammad's cross-motion (Doc. 22) for

summary judgment.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: March ____, 2021